IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JASMINE PENNIX, SR<br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY ("MARTA") and SANDRA JACKSON<br><br>        Defendants. | CASE NO.:<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT

1.

The Plaintiff, Jasmine Pennix (hereinafter "Plaintiff") is a Georgia resident.

2.

Defendant Metropolitan Atlanta Rapid Transit Authority ("MARTA") has its principal place of business in the State of Georgia and is subject to the jurisdiction of this Court. Defendant MARTA may be served with process through its registered agent for service of process, Peter J. Andrews, located at 2424 Piedmont Road, NE, Atlanta, Georgia 30324-3311

1

3.

Defendant Sandra Jackson ("Defendant Jackson") is a Georgia resident and at all times relevant to this Complaint was employed by Defendant MARTA. Defendant Jackson may be served with process through her employer MARTA and its registered agent for service of process, Peter J. Andrews, located at 2424 Piedmont Road, NE, Atlanta, Georgia 30324-3311

4.

The Court has subject matter jurisdiction of this action pursuant to U.S.C. § 1331.

5.

Venue for this matter is proper pursuant to 28 U.S.C. § 1391.

6.

Plaintiff brings this action, in part, pursuant to the provisions of the 42 U.S.C. § 2000e, *et. seq*. and Title VII of the Civil Rights Act of 1964 Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

## FACTUAL ALLEGATIONS

7.

Plaintiff was hired by MARTA on December 19 2022, as a commercial public bus driver and was assigned to MARTA's Laredo Bus Station.

8.

While working at the Laredo Bus Station, Defendant Jackson was Plaintiff's supervisor.

9.

Defendant Jackson began making unwanted sexual advances and comments directed toward Plaintiff.

10.

When Plaintiff did not accept and informed Defendant Jackson that her sexual advances were unacceptable, Defendant Jackson began harassing him by abusing her position as his supervisor by criticizing his uniform without justification, reassigning Plaintiff to (less desirable bus route), denying Plaintiff extra shifts, forcing Plaintiff to sit around the bus garage off the close for hours without assigning him as job.

11.

For example, on one occasion, Defendant Jackson got onto Plaintiff's bus and remained on the bus for over 40 mins encroaching on Plaintiff's personal space and acting in manner that Plaintiff perceived as flirting. Plaintiff informed Defendant Jackson that he was not interested in her. After being rebuffed, Defendant Jackson became

3

confrontational and told Plaintiff that his black sneakers were not up to MARTA's uniform standards.

12.

On June 7, 2023, Defendant Jackson raised issue with him being in uniform and wearing black athletic shoes and being out of compliance with MARTA dress code. Plaintiff found the issue to again be harassing because no other MARTA supervisor had ever raised any issue with his dress or him being out of compliance with MARTA's dress code. In raising the issue, Defendant Jackson used vulgar language directed toward Plaintiff that was harassing and hostile.

13.

On June 20, 2023, Defendant Jackson again accused Plaintiff of being in violation of MARTA's uniform standards. Plaintiff took issue with Defendant Jackson comments which caused on confrontation where MARTA police were called to resolve the dispute between Plaintiff as Defendant Jackson.

14.

As a result of the incident on June 20, 2023, Plaintiff was accused of violating the MARTA violence in the workplace policy based on an interaction where Defendant Jackson was inappropriate to Plaintiff.

4

15.

On or about June 21, 2023, Defendant Jackson filed a Petition for Stalking Temporary Protective Order against Plaintiff, alleging, *inter alia*, that Plaintiff had made terroristic threats against her at work.

16.

On or about June 21, 2023, Plaintiff MARTA Superintendent, Deandrea Jackson, placed Plaintiff on administrative leave with pay, pending an investigation into the incident between Plaintiff and Defendant Jackson. Plaintiff was told that his administrative leave would be for 90 days.

17.

While on administrative leave, Plaintiff could not return to work until the investigation was completed and a determination was made about his work status.

18.

On July 7, 2023, Plaintiff received a court order related to the allegation made against him against by Defendant Jackson which enjoined or restrained Plaintiff from approaching within 200 yards of Defendant Jackson.

19.

The court order also enjoined or restrained Plaintiff from having contact of any type, direct or indirect with Defendant Jackson.

20.

Violation of the court order would subject Plaintiff to immediate arrest or criminal prosecution that may result in jail time of fines.

21.

Defendant Jackson's actions in procuring a court order made it virtually impossible for Plaintiff to return to work without violating the court order.

22.

On July 14, 2023, Plaintiff filed a complaint with MARTA's Office of Diversity and Inclusion alleging Defendant Jackson's action were indicative of a hostile work environment.

23.

On July 19, 2023, MARTA's Office of Diversity and Inclusion accepted Plaintiff's complaint about the actions of Defendant Jackson.

24.

On August 8, 2023, Marta stopped paying Plaintiff during his administrative leave. Plaintiff was confused because he had been told his leave would last for 90 days and he would be paid during the leave period.

25.

When his pay was discontinued, Plaintiff reached out to MARTA's personnel to inquire as to why his pay was discontinued during his 90-day leave with pay period.

26.

On August 21, 2023, MARTA's EEO Investigator, Vilma D. Peguero, informed Plaintiff that MARTA was "looking into the sexual harassment allegations" Plaintiff made against Defendant Jackson."

27.

On August 29, 2023, three weeks after Marta discontinued Plaintiff's pay, Plaintiff emailed Defendant MARTA inquiring about the investigation. Specifically, Plaintiff asked "*What information was found re: said Marta Investigation?*"

28.

In response to Plaintiff's inquiry, MARTA's employee relations specialist, Jeffery Starnes, responded stating that the investigation determined that there was insufficient evidence support a finding that Plaintiff had violated MARTA's workplace violence policy. To date, Plaintiff has not received a determination letter setting forth the actual findings of the investigation.

29.

Plaintiff followed up to inquire as to what steps Defendant MARTA would implement to keep Defendant Jackson away from him in light of her obtaining a court order based on conduct Defendant MARTA had determined was not in violation of its workplace violence policy.

30.

In particular, Plaintiff requested a plan outlining how Defendant MARTA intended to keep Defendant Jackson away from him for the foreseeable future. Plaintiff also asked whether Defendant Jackson or Plaintiff would be assigned to another center.

31.

Because Plaintiff received no response, he did not feel comfortable returning to work and face the prospect of violating a court order.

32.

On August 31, 2023, Plaintiff was informed by the MARTA's EEO Investigator, Vilma Peguero, that MARTA was in the process of wrapping up Plaintiff's EEO complaint and that after the complaint was reviewed by diversity and inclusion and legal Mrs. Peguero would inform him of the findings.  To date, Plaintiff has not received a determination letter setting forth the actual findings of the investigation.

33.

On September 17, 2023, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On September 28, 2023, the EEOC issued Plaintiff the right to sue.

## COUNT I
## SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

34.

Plaintiff reallege and incorporate by reference paragraphs 1 - 32 above as though fully restated herein,

35.

In taking the above-described actions, Defendants discriminated against Plaintiff based on his gender, in violation of Title VII. Specifically, Defendants condoned and tolerated sexual harassment. Defendants' actions created, nurtured, tolerated, condoned, or otherwise permitted a sexually hostile environment in violation of Title VII.

36.

The conduct of Defendants was so severe or pervasive as to create a sexually hostile working environment for Plaintiff.

37.

Defendants knew or should have known that the Plaintiff was in a hostile work environment, being sexually harassed, and retaliated against based on concerns raised and communicated to his supervisor and other MARTA leadership.

38.

Defendants failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the sexual harassment of the Plaintiff.

39.

As a result of the actions of Defendants the Plaintiff has been and continues to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering and monetary and economic losses.

## COUNT TWO
## TITLE VII – RETALIATION

40.

Plaintiff realleges and incorporates by reference paragraphs 1 - 38 above as if fully restated herein.

41.

In taking the above-described actions, Defendants discriminated against and retaliated against Plaintiff for protesting against sexual discrimination. Employees who did not oppose the discriminatory actions described above were not treated in a similar manner as Plaintiff.

42.

The retaliation against Plaintiff is ongoing and of a continuous nature.

43.

As a proximate cause of Defendants' actions, Plaintiff has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A) A trial by jury on all issues so triable

B) That Plaintiff be awarded all economic damages caused by the violations of the law described herein;

C) That Plaintiff be awarded compensatory damages for all non-economic injuries, including but not limited to an award for mental anguish, suffered by them as a result of Defendants' unlawful acts;

D) That Plaintiff be awarded punitive damages in order to deter future unlawful conduct by Defendant and those similarly situated;

E) Plaintiff be awarded attorney fees and expenses of litigation

F) Plaintiff be awarded all other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted this December 26, 2023.

**SINTON SCOTT MINOCK & KEREW**
/s/ *Michael Jo'el Smith*
Michael Jo'el Smith
Georgia Bar No. 183081
Attorney For Plaintiff

3438 Peachtree Road, Suite 925
Atlanta, Georgia 30326
msmith@ssmklaw.com
470.890.1188